[No. G038373. Fourth Dist., Div. Three. Feb. 15, 2008.]

JULIO C. DOMINGUEZ, Plaintiff and Respondent, v.
AMERICAN SUZUKI MOTOR CORPORATION, Defendant and Appellant.

## Counsel

Snell & Wilmer, Richard A. Derevan, Jorge A. Martinez and Ryan P. Ruggerello for Defendant and Appellant.

David N. Barry and M. Nicholas Nita for Plaintiff and Respondent.

## Opinion

**O'LEARY, J.**—American Suzuki Motor Corporation (Suzuki) appeals from a judgment entered in favor of Julio C. Dominguez (Dominguez) after the parties stipulated to entry of judgment on appeal after the trial court denied Suzuki's summary judgment/adjudication motion. Suzuki argues the court erroneously denied the motion because it complied with the Song-Beverly Consumer Warranty Act (Song-Beverly) (Civ. Code, § 1790 et seq.)[1] when it offered to repurchase a motorcycle Dominguez had purchased from Pacific Motorsports (Pacific), a Suzuki dealer. We agree and reverse the judgment.

### FACTS[2]

On November 16, 2004, Dominguez purchased a new 2004 Suzuki DL 1000 (the Motorcycle) from Pacific. A few days later, he called Suzuki to complain about a problem with the Motorcycle. During the telephone call, he became abusive, and the Suzuki customer service representative ended the call. Over the course of the next six months, Dominguez took the Motorcycle to Suzuki-authorized service and repair facilities on at least five occasions.

On June 13, 2005, Dominguez's counsel sent letters to Suzuki and Pacific requesting that they "repurchase or replace the [Motorcycle] and pay his attorney fees and costs." The letter stated, "This firm will refrain from filing suit in an effort to resolve this matter prior to litigation."

---

[1] All further statutory references are to the Civil Code, unless otherwise indicated.

[2] In his respondent's brief, Dominguez twice fails to comply with the California Rules of Court. First, in his statement of facts, he fails to provide any record references as required by California Rules of Court, rule 8.204(a)(1)(C). Second, he includes as an exhibit a letter dated July 12, 2005, from Suzuki to his counsel that is not a part of the record on appeal, as it is not included in Suzuki's appendix, and Dominguez did not file a respondent's appendix as authorized by California Rules of Court, rule 8.124(a)(4). Additionally, he did not move to transmit exhibits as permitted by California Rules of Court, rule 8.224. Therefore, the letter is not part of the appellate record, and we will not consider it. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 [1 Cal.Rptr.3d 726].)

On June 21, 2005, Suzuki responded in writing to Dominguez's counsel. The letter, after explaining why its customer service representative ended the call with Dominguez, stated the repair mechanics were never able to duplicate the reported problem, the excessive mileage on the Motorcycle did not indicate there was a "recurrent problem," and Dominguez brought in the Motorcycle for issues unrelated to the alleged problem. The letter requested Dominguez bring the Motorcycle to an authorized Suzuki dealer of his choosing to have a technical service manager inspect and repair the Motorcycle to resolve the matter.

On July 28, 2005, Suzuki sent Dominguez's counsel another letter stating that "[i]n the interest of resolving this matter as quickly as possible . . . Suzuki . . . would like to extend to . . . Dominguez a buy back settlement offer for [the]" Motorcycle. Suzuki offered him $8,780.41, the total purchase price.

On August 25, 2005, Suzuki's counsel sent Dominguez's counsel a letter stating his desire to resolve the matter pursuant to the Song-Beverly. After detailing the previous correspondence, including Suzuki's previous offers to pay him the total purchase price, the letter acknowledged counsel's request for $2,500 in attorney fees. The letter disputed counsel was entitled to attorney fees, and assuming it was, the amount requested. The letter stated, however, that in an effort to resolve the matter, Suzuki was again offering $8,780.41 and $750 for "reasonable attorney[] fees."

After counsel apparently discussed the matter, on September 6, 2005, Suzuki's counsel sent Dominguez's counsel a letter repeating its August 25 offer. The letter said, "[Suzuki] remains willing to negotiate a reasonable amount for attorneys fees, but will not entertain fees that—as you concede—have not yet been incurred."

Dominguez filed a complaint against Suzuki and Pacific for breach of express and implied warranties under Song-Beverly and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss) (15 U.S.C. § 2301 et seq.). Suzuki and Pacific moved for summary judgment, Dominguez opposed the motion, and Suzuki and Pacific replied. After hearing argument, the trial court denied the motion, ruling Suzuki failed to comply with section 1793.2, subdivision (d). The parties stipulated to entry of judgment to facilitate an appeal pursuant to *Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810 [226 Cal.Rptr. 81, 718 P.2d 68], and the trial court entered judgment.[3] Suzuki timely appealed.

---

[3] As part of the stipulation, Dominguez agreed to dismiss Pacific.

## DISCUSSION

Suzuki argues the trial court erroneously denied its summary judgment/adjudication motion because it agreed to refund Dominguez's money in response to his prelitigation demand for repurchase or replacement of the Motorcycle. Dominguez claims the court properly denied the motion because Suzuki waited seven months to repurchase the Motorcycle and it twice denied his request to repurchase the Motorcycle. As we explain below, we agree with Suzuki.

### Summary Judgment

Summary judgment is properly granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) To secure summary judgment, a moving defendant has the "burden of showing that a cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that . . . defense . . . ." (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar, supra*, 25 Cal.4th at p. 849.)

On appeal, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers . . ." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089]), including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc., § 437c, subd. (b)(1), (2).) Inasmuch as the grant or denial of a motion for summary judgment strictly involves questions of law, we must reevaluate the legal significance and effect of the parties' moving and opposing papers. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522]; *Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674], disapproved on another ground in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245 [108 Cal.Rptr.2d 617, 25 P.3d 1096].) We may affirm an order granting summary judgment on a ground not relied on by the trial court, if the parties have been afforded the opportunity to brief the issue. (Code Civ. Proc., § 437c, subd. (m)(2).)

### Song-Beverly

■ "[Song-Beverly] 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make

express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties. [Citations.] It supplements, rather than supersedes, the provisions of the California Uniform Commercial Code. [Citations.] . . .' [Citation.] [¶] . . . [Song-Beverly] also makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the Commercial Code (. . . § 1790.3) and the Unfair Practices Act (. . . § 1790.4). [Song-Beverly] 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action. [Citation.]' [Citation.]" (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989–990 [73 Cal.Rptr.2d 682, 953 P.2d 858].)

Section 1793.2, subdivision (d)(1), states: "Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." Section 1791, subdivision (a), states, " 'Consumer goods' means any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. 'Consumer goods' shall include new and used assistive devices sold at retail."[4] Section 1794, subdivision (a), states, "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief."

Here, the record on appeal demonstrates the following: In November 2004, Dominguez purchased the Motorcycle. Over the course of the next six

---

[4] Section 1793.2, subdivision (d)(2), states, "If the manufacturer or its representative in this state is unable to service or repair a *new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of [s]ection 1793.22*, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle." (Italics added.)

Section 1793.2, subdivision (d)(2), does not apply to motorcycles as section 1793.22, subdivision (e)(2), expressly excludes them from the definition of "new motor vehicle." Indeed, since 1982 when the Legislature provided a remedy for a buyer of a "new motor vehicle" that suffers from the same defect repeatedly, motorcycles have been excluded from that protection. (See Stats. 1982, ch. 388, § 1, p. 1720; Stats. 1986, ch. 547, § 2, p. 1950; Stats. 1987, ch. 1280, § 2, p. 4557; Stats. 1988, ch. 697, § 1, p. 2314; Stats. 1989, ch. 193, § 2, p. 1180; Stats. 1991, ch. 689, § 10, p. 3101; Stats. 1992, ch. 1232, §§ 6, 7, pp. 5788, 5790; Stats. 2004, ch. 331, § 1.) Dominguez, in his respondent's brief, fails to address this issue, but argues section 1793.2, subdivision (d)(2), is applicable here. It is not.

months, he submitted it for repair on at least five occasions. On June 13, 2005, Dominguez's counsel requested Suzuki repurchase or replace the Motorcycle. One week later, Suzuki informed counsel, among other things, it was unable to duplicate the problem, and requested he submit the Motorcycle to an authorized dealer for repair. Five weeks later, Suzuki offered to repurchase the Motorcycle for the total purchase price. Four weeks later, Suzuki sent counsel a letter detailing its previous offers, acknowledging counsel's request for $2,500 in attorney fees, and offering $750 in attorney fees, an amount based on what it estimated was a one-hour consultation and the drafting of one form letter, the June 13, 2005, letters to Suzuki and Pacific. After failing to agree on attorney fees and costs, Dominguez filed suit approximately six weeks after Suzuki offered to repurchase the Motorcycle.

Section 1793.2, subdivision (d)(1), requires a manufacturer that cannot repair consumer goods after a reasonable number of attempts to "either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer . . . ." That is what happened here.

Approximately six weeks after Dominguez's counsel demanded Suzuki repurchase or replace the Motorcycle, Suzuki offered to repurchase the Motorcycle. But that was not good enough—counsel construed Suzuki's previous June 21, 2005, letter as a "willful" refusal to comply with Song-Beverly, which by its plain language it was not, and demanded a civil penalty two times the actual damages as permitted by section 1794, subdivision (c).[5] Dominguez did not file suit to require Suzuki to comply with Song-Beverly. It filed suit to recover the civil penalty and/or attorney fees.

■ There was no evidence Suzuki failed to comply, and certainly no evidence it "willfully" failed to comply, with Song-Beverly. The record includes one letter[6] where Suzuki said it was unable to replicate the problem and requested Dominguez submit the Motorcycle to an authorized dealer for repair. The letter was in response to Dominguez's demand for repurchase or replacement of the Motorcycle. The letter was not a refusal to comply with Song-Beverly. Additionally, Dominguez does not complain the number of attempts to repair the Motorcycle were unreasonable.

---

[5] Section 1794, subdivision (c), states, in relevant part, "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages."

[6] As we explain, *ante*, in footnote 1, Suzuki's July 12, 2005, letter is not part of the record on appeal. Thus, we will not consider it.

Contrary to Dominguez's assertion, there was a span of six weeks, *not seven months*, between his first demand for repurchase or replacement of the Motorcycle on June 13, 2005, and Suzuki's letter indicating it intended to repurchase the Motorcycle. Dominguez points to nothing in section 1793.2, subdivision (d)(1), which requires a manufacturer to offer to repurchase consumer goods within a specified time. And, there is nothing in the record on appeal to support the conclusion that prior to Dominguez's June 13, 2005, letter demanding repurchase or replacement of the Motorcycle that Suzuki refused to comply with Song-Beverly necessitating Dominguez hire counsel. He conceded as much in his complaint when he stated his first attempt to contact Suzuki concerning repurchase or replacement was June 13, 2005.

■ Dominguez's reliance on section 1794, subdivision (e), is misplaced. Section 1794, subdivision (e), authorizes an award of costs and attorney fees, and in appropriate cases a civil penalty of up to two times the damages, for a violation of section 1793.2, subdivision (d)(2). However, that section is inapplicable here. As we explain above, section 1793.2, subdivision (d)(2), does not apply because a motorcycle is not considered a "new motor vehicle" as defined by the statute.

■ Finally, Dominguez states: "It is only logical that if the Legislature did not intend for consumers to be forced to pay attorneys fees when they prevail in [an] action that they would likewise not want [c]onsumers who were successful in resolving their claim on [a] prelitigation basis to be forced to pay attorneys fees out of their own pocket." We assume "the Legislature knew what it was doing and meant the words to be applied as they were written. [Citation.]" (*Southern Cal. Edison Co. v. Public Utilities Com.* (2002) 101 Cal.App.4th 982, 994 [125 Cal.Rptr.2d 211].) Otherwise, the Legislature would have provided for an attorney fees award in section 1793.2, subdivision (d)(1), which it did not, or it would not have conditioned an attorney fees award on prevailing in an action, which it did in section 1794, subdivision (d).[7] Based on a plain reading of the applicable statutory provisions, we cannot conclude the Legislature intended that every time a manufacturer repurchases or replaces consumer goods, a consumer is entitled to attorney fees, regardless of whether it was pre- or postcommencement of litigation.

---

[7] Section 1794, subdivision (d), provides, "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

## DISPOSITION

The judgment is reversed. Appellant is awarded its costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied March 10, 2008, and on March 10, 2008, and April 3, 2008, the opinion was modified to read as printed above.