[No. B194345. Second Dist., Div. Eight. June 19, 2008.]

PO-JEN CHEN et al., Plaintiffs and Appellants, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB,
Defendant and Respondent.

COUNSEL

Law Office of Henry B. La Torraca and Henry B. La Torraca for Plaintiffs and Appellants.

Ford, Walker, Haggerty & Behar, Timothy L. Walker and K. Michele Williams for Defendant and Respondent.

OPINION

**RUBIN, J.**—Po-Jen Chen and Fang-Mei Lin appeal from that portion of the court's judgment awarding costs under Code of Civil Procedure section 998 to Interinsurance Exchange of the Automobile Club. We reverse and remand.

## FACTS AND PROCEEDINGS

Po-Jen Chen and Fang-Mei Lin own their home in San Gabriel and own a second house in San Marino. In May 2003, their properties were damaged in two separate incidents. Their San Gabriel home suffered extensive water damage when an upstairs bathroom water line broke, and their San Marino property suffered damage from high winds. Respondent Interinsurance Exchange of the Automobile Club insured both houses against property damage. Appellants filed claims with respondent under those insurance policies.

In May 2004, appellants sued respondent, alleging breach of the policies and bad faith. According to the lawsuit, respondent mishandled appellants' claims by, among other things, authorizing shoddy repair work, making lowball offers, failing to pay certain benefits such as an adequate temporary housing stipend, and refusing to properly remediate mold contamination. While the lawsuit was pending in August 2005, appellants' San Gabriel home

suffered new water damage in the kitchen separate from the earlier bathroom flooding. Appellants filed a new claim with respondent for insurance coverage for the kitchen. It is undisputed the kitchen flooding is not part of this lawsuit.[1]

In September 2005, respondent made a statutory offer of settlement to appellants under Code of Civil Procedure section 998.[2] Respondent's offer stated: "[Respondent] offers to compromise the above-entitled action for both plaintiffs in the total amount of $251,000.00. [¶] . . . [¶] This offer is conditioned upon plaintiffs executing a dismissal with prejudice of the action, as well as a general release of all claims in lieu of an entry of judgment against defendants." Appellants rejected the offer.

The case went to trial in 2006. By special verdict, a jury found respondent fully paid all of appellants' covered losses under the insurance polices for the wind damage and bathroom flooding. But, the jury additionally found that respondent acted unreasonably in handling appellants' claims. For respondent's unreasonable conduct, the jury awarded appellants $8,500 in economic damages and $141,500 in noneconomic damages.

Based on the total damages award of $150,000 being less than the $251,000 it had offered to settle, respondent moved under section 998 to recover the costs of its expert witnesses and its postoffer litigation and trial costs. Respondents further moved that the court deny appellants' attempt to recover the costs appellants incurred after they had rejected the settlement offer. Opposing respondent's request, appellants argued the settlement offer was invalid under section 998 because, one, respondent had not allocated the settlement proceeds between appellants and, two, had conditioned the offer on both appellants' accepting it. The court agreed with respondent and rejected appellants' contentions.

The parties thereafter filed costs bills. In the meantime, appellants moved for a new trial and renewed their objection to respondent's attempt to recover its costs. In support of their objection, appellants argued the section 998 offer was invalid because it had required them to release "all claims," which they interpreted as including damage from the separate kitchen flooding incident

---

[1] In September 2006, appellants filed a separate lawsuit against respondent for respondent's handling of appellants' insurance claim involving the kitchen. (Case No. BC358338.)

[2] All further undesignated section references are to the Code of Civil Procedure.

that had not been part of their lawsuit. The court rejected appellants' argument. It thereafter awarded more than $310,000 in postoffer costs to respondent and almost $9,800 in preoffer costs to appellants. Taking into account the $150,000 jury award for appellants, the costs awards resulted in a net recovery to respondent of $150,949.79. Appellants appeal from the awards.[3]

## DISCUSSION

■ As a rule, prevailing parties, such as appellants here, may recover their litigation and trial costs. (§ 1032.) When section 998 applies, it changes that rule. Under that statute, if the plaintiffs reject a defendant's offer to compromise and then fail to win a more favorable judgment, the plaintiffs cannot recover their postoffer costs and must pay the costs the defendant incurred after the offer.[4]

■ An offer to settle under section 998 must have several features to be valid. For example, it must not dispose of any claims beyond the claims at issue in the pending lawsuit. (*Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 696–697 [247 Cal.Rptr. 483] (*Valentino*).) That limitation exists because of the difficulty in calculating whether a jury award is more or less favorable than a settlement offer when the jury's award encompasses claims that are not one and the same with those the offer covers. (*Valentino*, at p. 698; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 12:595, p. 12(II)-23 (rev. # 1, 2007) ["To trigger the potential § 998 penalties, the terms and conditions must be sufficiently certain to be *capable of valuation.* Otherwise, it may not be possible to determine whether any recovery at trial is 'more favorable.' [*Valentino v. Elliott Sav-On Gas, Inc.*[, *supra*,] 201 CA3d 692, 700–701, 247 CR 483, 488—$15,000 offer was conditioned on release of claims other than

---

[3] In connection with the appeal, we have granted respondent's motion to augment the record on appeal.

[4] Section 998 states: "[A]ny party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer . . . . [¶] . . . [¶] (c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition . . . the court . . . in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses . . . ."

those being litigated: value of those claims was uncertain, rendering $15,000 offer uncertain]."].)

We independently review whether respondent's section 998 settlement offer was valid. (*Fassberg Construction Co. v. Housing Authority of Los Angeles* (2007) 152 Cal.App.4th 720, 765 [60 Cal.Rptr.3d 375].) In our review, we interpret against respondent any ambiguity in the offer. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 [101 Cal.Rptr.2d 167].) Appellants' lawsuit alleged respondent mishandled appellants' claims for water damage to one property from a broken upstairs bathroom pipe and for wind damage to a second property; the kitchen flooding was not part of the lawsuit. In settlement, respondent offered appellants $251,000. In return for its payment, respondent demanded a "general release of all claims."

■ Appellants contend the phrase "all claims" was, at the very least, ambiguous because of its pending claim for the kitchen flooding.[5] We agree. The following hypothetical scenario illustrates why: Suppose appellants had accepted respondent's offer and signed a general release of all claims, but then tried to prosecute a lawsuit involving water damage in the kitchen that both sides knew about when appellants settled the lawsuit here. One can imagine respondent arguing appellants' release of "all claims" barred a new lawsuit involving the kitchen. Strengthening respondent's argument, the Civil Code's definition of a "general release" would favor respondent's assertion. Civil Code section 1542 provides that a general release does not affect *unknown* claims; by implication, a general release thus covers all *known* claims. (See Civ. Code, § 1542 ["A general release does not extend to claims which the creditor does not know or suspect to exist . . . ."].) Without deciding whether respondent's argument would prevail, one can anticipate that a future court would not reject its argument as frivolous. And, what is instructive is the argument pivots on the ambiguity of whether "all claims" involves only the *two* claims of the lawsuit here or the *three* claims—including kitchen damage—that appellants made under their insurance policies.[6]

---

[5] In fact, appellants appear to argue that the most reasonable interpretation of the phrase "all claims" included the kitchen damage. They do not need to prove this bolder assertion, however, to prevail on appeal because ambiguity in the section 998 offer is good enough to let appellants escape the offer's cost-shifting consequences. (*Barella v. Exchange Bank, supra,* 84 Cal.App.4th at p. 799 ["a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation"].)

[6] Oftentimes legal writers use the terms "claim" and "cause of action" interchangeably with no harm to anyone, but this case illustrates the hazard of their use as synonyms in insurance litigation because "claim" has a particular meaning in the insurance industry.

Respondent contends *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899 [32 Cal.Rptr.2d 740] (*Goodstein*) shows appellants are mistaken in seeing ambiguity in the offer. *Goodstein* establishes that a general release can be part of a valid section 998 offer. But *Goodstein* is distinguishable because its general release did not apply to "all claims." The settlement offer in *Goodstein* proposed: " 'In full settlement of this action, [defendant] hereby offers to pay [Goodstein] the total sum of $150,000 in exchange for each of the following: [¶] 1. The entry of a Request for Dismissal with prejudice on behalf of [Goodstein] in favor of [defendant]; [¶] 2. The execution and transmittal of a General Release by [Goodstein] in favor of [defendant]; [¶] 3. Each party is to bear their own respective costs and attorney's fees.' " (*Goodstein*, at p. 905.) Because the *Goodstein* release did not use language that might suggest the offer involved more than the claims in the pending lawsuit, the offer was valid. (*Goodstein*, at p. 907 ["the offer reasonably cannot be construed to apply to other litigation contemplated by Goodstein."].) Here, in contrast, appellants filed three claims with respondent for insurance coverage. Moreover, two of the claims involved the same type of damage—one inside the lawsuit for water damage in the upstairs bathroom, and one outside the lawsuit for water damage in the kitchen. Appellants' assertion of ambiguity in the scope of respondent's settlement offer is therefore well-taken.

Respondent contends "all claims" reasonably meant only the two claims being litigated, and it was unreasonable to interpret it as meaning anything else. For the reasons we have just stated, we disagree. Furthermore, respondent's contention relies on selectively quoting the settlement offer. In asserting the proposed general release applied only to the wind damage and bathroom flooding, respondent argues that the offer's intent was "to compromise the above-entitled action" by seeking dismissal "of the action" and a general release "in lieu of an entry of judgment against defendant." But in its recitation of the offer's language, respondent gamely tries to leap over the phrase "all claims," which lies in the middle of the sentence it emphasizes as follows (we italicize what respondent quotes and highlight what it omits): "This offer is conditioned upon plaintiffs executing a dismissal with prejudice *of the action*, **as well as a general release of all claims** *in lieu of an entry of judgment against defendants*." (Italics & boldface added.) When not ignoring the word "all," respondent tries to dismiss it as inconsequential,[7] but here that word makes all the difference insofar as creating ambiguity.

---

[7] Respondent's brief states: "[Appellants'] argument, which turns upon the one word 'all,' is specious."

## DISPOSITION

The trial court is directed to vacate its costs award to respondent, to permit appellants to file a new memorandum of costs, and to recalculate appellants' costs award as prevailing parties without regard to respondent's section 998 offer to settle. Appellants to recover their costs on appeal.[8]

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied July 21, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied October 22, 2008, S166343. Werdegar, J., did not participate therein.

---

[8] Because we are reversing the cost award based on the section 998 offer's ambiguity, we need not address appellants' other contentions that the award was error.